IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MAGDALENE KING BANKS,

      Plaintiff,

vs.

JOHN E. POTTER, et al.,

      Defendant.

No. 09-2429-STA-dkv

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 34)
ORDER OF DISMISSAL
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On July 7, 2009, Plaintiff Magdalene King Banks, a resident of Memphis, Tennessee, filed a pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Docket Entry ("D.E.") 1.) Banks paid the civil filing fee. (D.E. 2.) Defendant filed an answer to the complaint on October 13, 2009. (D.E. 10.) On September 20, 2010, Defendant filed a motion to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6), or in the alternative for summary judgment under Fed. R. Civ. P. 56, a statement of undisputed material facts, a memorandum of law in support, and exhibits. (D.E. 34, Parts 1-9; D.E. 35; D.E. 36, D.E. 39.) Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted. (D.E. 34 at 1.) Defendant relies on exhibits outside the pleadings, therefore, the motion to dismiss

must be treated as one for summary judgment.  <u>See</u> Fed. R. Civ. P.
12(d).  Plaintiff responded to the motion for summary judgment on
September 27 and October 1, 2010. (D.E. 37; D.E. 38.)

I.    <u>Jurisdiction</u>

This Court has original jurisdiction over federal claims under
Title VII pursuant to 28 U.S.C. § 1331.  <u>Brown v. General Services</u>
<u>Administration</u>, 425 U.S. 820 (1976).

II.   <u>Relevant Facts</u>

The relevant facts follow:[1]

1.    The Plaintiff worked as a postal employee for the United
States Postal Service beginning in January 1985 until her
retirement in April 2009. (D.E. 34-4, Exhibit 2: Banks
Depo. at 35, 154, 283; D.E. 34-5, Exhibit 3: Banks Depo.
Exhibits at Exhibit 22). At all times relevant to the
issues in the Complaint, Plaintiff was employed as a Tour
1, limited duty mail processing clerk at the Memphis
Processing and Distribution Center (Memphis P&DC,
commonly referred to as the Plant), 555 South Third
Street, Memphis, Tennessee. (D.E. 34-4, Exhibit 2: Banks
Depo. at 51-56, 77-78, 85, 287—288; D.E. 34-5, Exhibit 3:
Banks Depo. Exhibits at Exhibit 24).

2.    At all times relevant to this lawsuit, George Hackett, a
54 year old, African-American male, was the Senior
Manager, Distribution Operations (MDO) at the Plant.
(D.E. 34-4, Exhibit 2: Banks Depo. at 87-88; D.E. 34-6,
Exhibit 4: Declaration of Dino Desorbo at Attachment 1-
Sworn EEO Affidavit of George Hackett).

---

[1]    Local Rule 7.2(d)(3), provides,

the opponent of a motion for summary judgment who disputes any of
the material facts upon which the proponent has relied pursuant to
subsection (2) above shall respond to the proponent's numbered
designations, using the corresponding serial numbering, both in the
response and by attaching to the response the precise portions of
the record relied upon to evidence the opponent's contention that
the proponent's designated material facts are at issue.

Plaintiff has not complied with L.R. 7.2(d)(3). Therefore, the Court adopts
Defendant's statement of material facts as undisputed.

3.  At all times relevant to this lawsuit, Matthew Cummins (Matt Cummins), a Caucasian male under the age of 40, was a Manager, Distribution Operations (MDO) on Plaintiff's Tour of Duty at the Plant. (D.E. 34-4, Exhibit 2: Banks Depo. at 86-87; D.E. 34-6, Exhibit 4: Declaration of Desorbo at Attachment 3 - Sworn EEO Affidavit of Matt Cummins).

4.  At all times relevant to this lawsuit, Carl Iannazzo, a 52 year old Caucasian male, was the Plant Manager, for Memphis P & DC. (D.E. 34-4, Exhibit 2: Banks Depo. at 88; D.E. 34-6, Exhibit 4: Declaration of Desorbo at Attachment 2 - Sworn EEO Affidavit of Carl Iannazzo).

5.  At all times relevant to this lawsuit, the term 204(B) was used to describe a temporary detail to an acting supervisory position within the Postal Service. (D.E. 34-4, Exhibit 2: Banks Depo. at 197-198, 242-243; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3, 000355).

6.  The Associate Supervisors Program (ASP) training was mandatory training for Postal employees desiring to become permanent, non-detailed supervisors and ASP training had to be completed prior to a permanent supervisory promotion. (D.E. 34-4, Exhibit 2: Banks Depo. at 190, 243-244).

7.  The Plaintiff is an African-American female. (D.E. 34-4, Exhibit 2: Banks Depo. at 92).

8.  At the time of incident giving rise to this lawsuit Plaintiff was 56 years of age. (D.E. 34-4, Exhibit 2: Banks Depo. at 24; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000393, Ex. 8 at 000383).

9.  The Plaintiff has been diagnosed as suffering from Bilateral Carpal Tunnel Syndrome, Right Trigger Finger, Cervical Strain, and Tendinitis/Arthritis in her left shoulder and neck. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3, 000364 and 00365; D.E. 34-7, Exhibit 5: U.S. Department of Labor Forms CA 17 included among documents sent by mailed to Defendant from Plaintiff on 8/4/10).

10. Beginning in approximately 1994 up to and including the time of the incident giving rise to this lawsuit, the Plaintiff's was on limited duty status; meaning that she had medical restrictions resulting from work-related injuries. (D.E. 34-4, Exhibit 2: Banks Depo. at 38; 44-46; 75-81).

3

11.  Plaintiff's discrimination claim is based upon her limited duty status. (D.E. 34-4, Exhibit 2: Banks Depo. at 241-242).

12.  Although she was a limited duty employee, Plaintiff was temporarily detailed as a 204(B) supervisor. (D.E. 34-4, Exhibit 2: Banks Depo. at 198-205, 242; D.E. 34-5, Exhibit 3: Banks Depo Exhibit 3, 000363-365).

13.  As a result of various work related injuries, beginning approximately on December 19, 2005, though September 24, 2007, Plaintiff's U.S. Department of Labor Worker's Compensation work restrictions prohibited her from lifting heavy equipment, required her to refrain from repetitive lifting with her left shoulder, and required her to be allowed frequent breaks to rest her hands. (D.E. 34-4, Exhibit 2: Banks Depo. at 44; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3, Department of Labor Forms found at documents 000364 and 00365 ; D.E. 34-7, Exhibit 5: U.S. Department of Labor Forms CA 17 and medical documentation included among documents sent by mail to Defendant from Plaintiff on 8/4/10).

14.  In approximately 1994-1995, or 1995-1996, Plaintiff was assigned to work in the Postal Mailroom facility for approximately one or two years. During the time that Plaintiff worked in the mailroom, Plaintiff's work restrictions were due to a shoulder injury. Her U.S. Department of Labor work restrictions provided that she should refrain from repetitive lifting with the left side. (D.E. 34-4, Exhibit 2: Banks Depo. at 39-40, 44-45, 53-54, 58-60, 62-65, 72-73).

15.  Plaintiff injured her finger while working as a mailroom employee and Plaintiff's workers compensation claim regarding her finger was subsequently accepted by the U.S. Department of Labor. (D.E. 34-4, Exhibit 2: Banks Depo. at 67,-72).

16.  Plaintiff was able to perform the duties assigned to her while working in the mailroom and she states she was instrumental in establishing (setting up) the mailroom for the Memphis Post Office. (D.E. 34-4, Exhibit 2: Banks Depo. at 62-65, 67, 72-73).

17.  In approximately 2002, Plaintiff began working in the 030 Unit, at the downtown postal facility in the "Plant," which is located at 555 South Third Street in Memphis, Tennessee. (D.E. 34-4, Exhibit 2: Banks Depo. at 51, -52, 55-56; D.E. 34-6, Exhibit 4: Declaration of Desorbo At Attachment 2 – EEO Affidavit of Carl Iannazzo at 000597).

18.  Plaintiff developed Carpal Tunnel Syndrome six months after she began working on the limited duty belt in the 030 unit. (D.E. 34-4, Exhibit 2: Banks Depo. at 75).

19.  Since 2002, Plaintiff has worked in the following units within the Plant: 1) the 030 Unit, where Plaintiff worked on "the limited duty belt" and where her duties and responsibilities included "casing" mail and recovering residual mail rejected by the machinery; (D.E. 34-4, Exhibit 2: Banks Depo. at 77-78); 2) the Box Section Unit, where her duties included screening mail to make sure it was in the right location; (D.E. 34-4, Exhibit 2: Banks Depo. at 75- 76); and 3) an area that Plaintiff identified as "IRS Mail" where her duties included placing IRS mail in order, alphabetizing the mail and preparing IRS mail to be "loaded out." (D.E. 34-4, Exhibit 2: Banks Depo. at Page 76-77).

20.  Plaintiff was able to perform the all duties assigned to her while working in the 030 unit, the Box Section, and with IRS Mail. (D.E. 34-4, Exhibit 2: Banks Depo. at 75-81).

21.  Plaintiff learned and mastered every job assignment she had during her career at the United States Post Office (D.E. 34-4, Exhibit 2: Banks Depo. at 80).

22.  Approximately one year prior to September 2007, Dennis Johnson, the then acting MDO of Tour 1, offered Plaintiff the opportunity to work as a 204(B) supervisor; however, Plaintiff rejected this offer. (D.E. 34-4, Exhibit 2: Banks Depo. at 106-110).

23.  Sometime prior to September 2007, Plaintiff asked Regina Todd, the acting MDO for Tour 3, if she could assist her in obtaining an assignment to Tour 3 and if she would allow her to serve in the capacity of 204(B), acting supervisor. (D.E. 34-4, Exhibit 2: Banks Depo. at 110-112).

24.  On September 8, 2007, Postal management and Plaintiff signed an assignment order, detailing the Plaintiff to the position of 204(B), acting supervisor, for the period covering September 8, 2007 through October 8, 2007. (D.E. 34-4, Exhibit 2: Banks Depo, 197-201, 242-243; D.E. 34-5, Exhibit 3: Banks Depo Exhibits at Exhibit 3, 000355).

25.  While serving as a 204B supervisor, on or about September 16, 2007, Plaintiff instructed a customer to go to Walgreens Drug Store to purchase stamps. Postal employee Phyllis Jefferson was present when this occurred. (D.E.

34-4, Exhibit 2: Banks Depo. at pp. 113-114, 117-123-130; 154-155,197-201, 242-243; D.E. 34-5, Exhibit 3: Banks Depo Exhibits at Exhibit 3, 000355).

26. Following this incident, Phyllis Jefferson gave a statement to management describing her version of the incident that occurred between Plaintiff and the customer. (D.E. 1, Complaint at 43-46; D.E. 34-4, Exhibit 2: Banks Depo. at 124-126; 193; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 16 at pp. 4, 5, and 7).

27. Plaintiff was removed from her detail as a 204(B) supervisor subsequent to her instruction to a postal customer to purchase stamps at Walgreens. (D.E. 34-4, Exhibit 2: Banks Depo. at 105-106).

28. Subsequent to Plaintiff's September 2007 removal as a 204(B) supervisor, an announcement was posted in the Post Office Plant, notifying Plaintiff and other employees of an October 9, 2007 scheduled Associate Supervisors Program (ASP) training. However, Plaintiff did not sign up for this training. Although ASP training is mandatory for persons desiring to become supervisors, Plaintiff never enrolled in ASP training. (D.E. 34-4, Exhibit 2: Banks Depo. at. 190, 242-244; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3, 000361).

29. Plaintiff states she had a conversation with Matt Cummins, wherein he advised Plaintiff that Phyllis Jefferson reported the stamp incident to the Plant Manager. (D.E. 34-9, Exhibit 7: Motion for Charges R.E. 23 at 5; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3 at 000339).

30. George Hackett gave a sworn EEO Investigative Affidavit stating that he removed Plaintiff as 204(B) based on her instruction to the customer to purchase stamps at Walgreens. (D.E. 34-6, Exhibit 4: Declaration of Desorbo at Attachment 1- Sworn EEO Investigative Affidavit of George Hackett).

31. Carl Iannazzo gave a sworn EEO Investigative Affidavit, wherein he stated that he was not aware of any physical or mental impairment of the Plaintiff and that Plaintiff was not allowed to serve as a 204(B) because of her treatment of a customer. (D.E. 34-6, Exhibit 4: Declaration of Desorbo at Attachment 2 - Sworn EEO Affidavit of Carl Iannazzo).

32. Plaintiff's allegations of race, color, sex, age, physical and mental disabilities all arise out of the

incident contained in paragraphs 5 and 9 of her Complaint filed in this court (D.E. 1; D.E. 34-4, Exhibit 2: Banks Depo. at pp. 136-142). Paragraphs 5 and 9 of the Complaint allege that on or about September 22-23, 2007, Plaintiff alleges that she was informed that the Plant Manager, Mr. Carl Iannazzo, did not want her to act as a 204B supervisor because she was a limited duty employee. (D.E. 1 at 3 of 68).

33. Plaintiff's allegation of sex discrimination is based on the fact that she is a woman and the alleged discriminatory officials, George Hackett, Matt Cummins and Carl Iannazzo, are men. (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 159-163).

34. Two other black women, Kim Turner and Connie Williams, and a black man, Marvin Pleasant, were allowed to work as 204(B) supervisors. (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 160-162, 172-174).[2]

35. Plaintiff's allegations of race and color discrimination are based upon the fact that she is black and "two whites made the call." (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 164-165, 218; D.E. 34-5, Exhibit 3 Depo. Exhibits at Exhibit 7 at 000393; Exhibit 8 at 000383).

36. Plaintiff named R.P., as a similarly situated Caucasian male who was treated differently from her based on race.[3] (D.E. 34-4, Exhibit 2: Banks Depo. at 165-166, 169-172.

37. Plaintiff stated that she really has no proof that she was not allowed to serve as a 204(B) because she was black. (D.E. 34-4, Exhibit 2: Banks Depo. at 178).

38. Exhibit 7 to Plaintiff's deposition is her handwritten EEO Investigative Affidavit signed by Plaintiff under penalty of perjury. (D.E. 34-4, Exhibit 2: Banks Depo. at 213-216; ; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7).

---

[2] During her deposition, Plaintiff stated that Kim Turner and Connie Williams are light-skinned Black women. Hence, Plaintiff, insinuated, for the very first time, that her "color" discrimination claim was related to skin coloring. In her underlying EEO case, Plaintiff alleged that her color claim was based on race (Black). Since Plaintiff did not exhaust a skin color claim on the administrative level, she cannot now amend her lawsuit to add such a claim and the issue will not be further addressed. (See Exhibit 2: Banks Depo. at 218; Banks Depo. Exhibits at Exhibit 8, 000383; Exhibit 1: Complaint R.E. 1 at 12, 15).

[3] The employee's initials are being used in lieu of his name to protect his privacy. Documents related to this individual are filed under seal.

39.   Plaintiff testified that she was capable of working a full 8 hours within the limitations of her job-related conditions. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000390-000391).

40.   Plaintiff was asked if her physical impairment substantially impaired any of the following major life activities (i.e. caring for one's self, performing manual task, walking, seeing, hearing, speaking breathing, learning, or working) and, if so, what and how it affected her. Plaintiff responded "There are some impairments, however, I am capable of working a full 8 hours with limitation." (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000388).

41.   When asked if management was aware of her physical impairment, Plaintiff responded that "[t]he Plant manager might not have been aware (of her physical impairment) until the complaint about letting the customer know she could buy stamps at Walgreen (sic), but he still had an obligation to meet with her and get her side of the story." (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7, 000388).

42.   Plaintiff was asked if her mental impairment substantially impaired any of the following major life activities (i.e. caring for one's self, performing manual task, walking, seeing, hearing, speaking breathing, learning, or working), and if so, what and how did it affect her. Plaintiff responded: "No, I manage with the professional help of my psychiatric, (sic) whom I am very well please (sic) with. I kept looking for one that could keep me functioning in life as a normal person." (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000390).

43.   None of the Plaintiff's job related activities were affected by her mental impairment. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000391).

44.   Plaintiff never physically provided management with documentation of a mental impairment. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 00391).

45.   Plaintiff lived a normal life and it was difficult for anyone to tell she suffered from mental issues. (D.E. 34-4, Exhibit 2: Banks Depo. at 209-210).

46.   Plaintiff states she hid her mental condition "pretty good". (D.E. 34-4, Exhibit 2: Banks Depo. at 252).

47.   Plaintiff lacks proof that Cummins, Iannazzo or Hackett knew that she was seeing a psychiatrist. (D.E. 34-4, Exhibit 2: Banks Depo. at 241).

48.   Plaintiff admits management did not discriminate against her "per se mentally", and Plaintiff has no proof that her supervisors were aware of her mental condition. (D.E. 34-4, Exhibit 2: Banks Depo. at 242).

49.   Plaintiff did not provide management with documents related to her mental condition until after she filed her EEO Complaint. (D.E. 34-4, Exhibit 2: Banks Depo. at 207).

50.   Plaintiff alleges Linda Ratliff, Marvin Pleasant and Kim Turner were the individuals treated differently based on age. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000395).

51.   Plaintiff presently serves as a minister and her day to day activities include making public presentations and counseling others. (D.E. 34-4, Exhibit 2: Banks Depo. at 289-291).

52.   Plaintiff has no proof that Matt Cummins' assertions that he unaware of any physical accommodation requests, the extent of physical limitations, or existing mental condition of Plaintiff are not true statements. (D.E. 34-4, Exhibit 2: Banks Depo. at 250-253).

53.   Plaintiff has no proof of falsity of Cummins' statement that he was not the person who decided that Plaintiff should not allowed to continue working as a 204(B). (D.E. 34-4, Exhibit 2: Banks Depo. at 252-253).

## III. <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(c) states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In reviewing a motion for summary judgment, the court must view the underlying facts and all inferences to be drawn therefrom in the light most favorable to

the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also  60 Ivy Street Corp. v. Alexander, 822 F. 2d 1432, 1435 (6th Cir. 1987). See also Kochins v. LindenAlimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When ruling on a motion for summary judgment, mere existence of a scintilla of evidence in support of the plaintiff's position will not be sufficient; there must be evidence on which the jury could reasonably find for the plaintiff. Id.

Federal Rule of Civil Procedure 56(e)(2) further states that, "[w]hen a motion for summary judgment is made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Rule 56(e) requires the opposing party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

IV.   Applicable Law and Analysis

The United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no direct evidence of discrimination.[4]   That method has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

A.   Race Discrimination

To establish a prima facie case of race discrimination, Plaintiff must show that she was a member of a protected group, was

---

[4]      Plaintiff alleges, but does not provide credible, material evidence of direct discrimination "which, if believed requires a conclusion that unlawful discrimination or retaliation was at least a motivating factor in the [Defendant's] actions" and "does not require a factfinder to draw any inferences" to reach that conclusion. Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 470 (6th Cir. 2005). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006). Because the Court's review of the record reveals no material evidence of direct discrimination, the Plaintiff must establish a prima facie case of discrimination pursuant to the McDonnell Douglas formulation from which a discriminatory motive may be inferred.

qualified for the position she held prior to discharge, was subjected to an adverse action, and was replaced by a person outside her protected group. McDonnell Douglas, 411 U.S. at 802. "When the plaintiff lacks the fourth element of the McDonnell Douglas prima facie criteria, a plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that 'a comparable non-protected person was treated better.'" Montgomery v. Honda of Am. Mfg., Inc., 47 Fed. Appx. 342, 346 (6th Cir. Sept. 24, 2002) (citation omitted); see also Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002).

It is undisputed that Plaintiff is an African-American female who was suffered an adverse employment action because her temporary detail to an acting supervisory position was terminated after Plaintiff instructed a customer to go to Walgreens Drug Store to purchase stamps and that action was reported by Postal employee Phyllis Jefferson. (D.E. 1, Complaint at 43-46; D.E. 34-4, Exhibit 2: Banks Depo. at pp. 113-114, 117- 123-130; 154-155,197-201, 242-243; D.E. 34-5, Exhibit 3: Banks Depo Exhibits at Exhibit 3 at 000355;Banks Depo. Exhibits at Exhibit 16 at pp. 4, 5, and 7). The termination occurred prior to the end of the authorized detail period.

Plaintiff conceded in her deposition that her allegations of race discrimination are based upon the fact that she is black and "two whites made the call." (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 164-65, 218; D.E. 34-5, Exhibit 3 Depo Exhibits at Exhibit 7 at 000393, Exhibit 8 at 000383). However, Plaintiff admitted that she

has no proof that she was not allowed to serve as an Acting Supervisor because she was black. (D.E. 34-4, Exhibit 2: Banks Depo. at 178). Furthermore, she acknowledged that two other black women, Kim Turner and Connie Williams, and a black man, Marvin Pleasant, were allowed to work as Acting Supervisors. (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 160-62, 172-74).

Plaintiff has not filed affidavits that rebut her deposition testimony or that rebut the affidavits of George Hackett and Carl Iannazzo that Plaintiff was not allowed to act as a 204(b) supervisor because of her treatment of a customer. (D.E. 34-6, Exhibit 4: Declaration of Desorbo at Attachment 1- Sworn EEO Investigative Affidavit of George Hackett and at Attachment 2 - Sworn EEO Affidavit of Carl Iannazzo). Furthermore, Plaintiff admitted that she did not sign up for ASP training even though the training is mandatory for persons who desire to become permanent supervisors. (D.E. 34-4, Exhibit 2: Banks Depo at 190, 242-44; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3, 000361).

Plaintiff names R.P. as a similarly situated Caucasian male who was treated differently from her based on race. (D.E. 34-4, Exhibit 2: Banks Dep. at 165-66, 169-74). However, the records filed under seal by Defendant establish that R.P. was not a 204(B) acting supervisor, but was a permanent supervisor who voluntarily stepped down after he was charged with misuse of a postal credit card and after notice from a supervisor that the supervisor was proposing a reduction in grade. (D.E. 35, Exhibit 6: Declaration of Patricia Poff and Attached Record). Plaintiff has provided no

13

affidavit which rebuts Poff's declaration or any document that supports any inference that comparable non-protected employees were similarly situated and treated better than Plaintiff. She fails to establish by affidavits or allegations that "for the same or similar conduct, [s]he was treated differently than similarly-situated non-minority employees." Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992).

Plaintiff's complaint and response to Defendant's motion for summary judgment fail to provide any factual basis for a claim that Defendant made any materially adverse employment decision based on Plaintiff's race. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 883 (6th Cir. 1996)(citing McDonnell Douglas, 411 U.S. at 802). Plaintiff's complaint and response offer speculation and subjective conclusions that are inadequate to offset a properly supported summary judgment motion. Plaintiff's opinions do not meet her burden to offer facts or affidavits that would raise a genuine issue of material fact about her claims.

Conclusory allegations and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell, 964 F.2d at 585. Plaintiff has failed to establish a prima facie case of race discrimination under McDonnell Douglas. Plaintiff's allegations do not create a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on Plaintiff's claim of race discrimination.

14

B.   Sex Discrimination

To establish a prima facie case of sex discrimination, Plaintiff must demonstrate:

> "(1) she was a member of a protected class; (2) she was discharged [or demoted]; (3) she was qualified for the position; and (4) she was replaced by a person outside the class" or that a "comparable non-protected person was treated better."

See Mitchell, 964 F.2d at 582 (6th Cir. 1992).

Plaintiff's allegations of sex discrimination arise from the termination of her temporary detail as an acting supervisor before the end of the detail period.  Plaintiff alleges that the basis of her claim is that she is "female" and "Matt, Mr. Hackett, and Mr. Iannazzo" "are all males." (D.E. 34-4, Exhibit 2: Banks Depo. at 159, 162-63).  However, Plaintiff has acknowledged that two other black women, Kim Turner and Connie Williams were allowed to work as Acting Supervisors. (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 160, 172-74).  Plaintiff also admitted that she did not sign up for ASP training even though the training is mandatory for persons who desire to become permanent supervisors. (D.E. 34-4, Exhibit 2: Banks Depo at 190, 242-44; D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 3, 000361).

Plaintiff's complaint and response to Defendant's motion for summary judgment fail to provide any factual basis for a claim that Defendant made any materially adverse employment decision based on Plaintiff's sex.  Kocsis, 97 F.3d at 883 (citing McDonnell Douglas, 411 U.S. at 802).  Additionally, Plaintiff fails to establish by affidavits or other evidence that she was replaced by a person

15

outside her protected class, and therefore, she fails to satisfy the fourth element of the McDonnell Douglas prima facie case. Conclusory allegations and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell, 964 F.2d at 585.    Furthermore, Defendant's dissatisfaction with Plaintiff's treatment of a customer articulates a legitimate, nondiscriminatory reason for the decision to terminate Plaintiff's temporary detail as an acting supervisor.    There are no genuine issues of material fact as it relates to Plaintiff's claim of sex discrimination, and Defendant is entitled to judgment as a matter of law.

C.   Age Discrimination

The ADEA prohibits an employer from discriminating "against an individual with respect to [her] terms of compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to establish a prima facie case of age discrimination under ADEA, Plaintiff must establish: (1) she was a member of the protected class, meaning she was at least 40 years old; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a substantially younger individual. Skelton v. Sara Lee Corp., 249 Fed. Appx. 450, 456 (6th Cir. 2007); Hedrick v. Western Reserve Care System, 355 F.3d 222, 459-60 (6th Cir. 2004); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir. 1982). While age differences of ten years or more have generally been held to establish the "substantially younger" element of the

16

McDonnell Douglas test, age differences of ten years or less have not. <u>Grosjean v. First Energy Corp.</u>, 349 F.3d 332, 336-69 (6th Cir. 2003).  The Sixth Circuit has declined to create a bright line rule for "substantially younger," it has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." <u>Id.</u> at 340.

The parties agree that Plaintiff Banks was a member of a protected class, age 56, and suffered an adverse employment action. The Court has reviewed Plaintiff's complaint and exhibits. (D.E. 1 at 1-68). The complaint contains no factual allegations which support a claim of age discrimination. Plaintiff cited Marvin Pleasant, Linda Ratcliff, and Connie Williams as individuals treated differently based on age, however Defendant's records reveal that in September 2007, Pleasant was 55 years old, Ratliff was 54 years old, and Williams was 42 years old. (D.E. 39 at 1).

Plaintiff has not provided exhibits or affidavits establishing that Defendant considered age to be significant.  Pleasant and Ratliff were not "substantially younger" individuals.  Although Williams was fourteen years younger than Plaintiff, Williams also qualifies as a member of the protected class (over 40). Furthermore, Plaintiff has failed to present any authenticated exhibit or affidavit establishing that any younger person was treated differently based on age.  There are no genuine issues of material fact as it relates to Plaintiff's claim of age

discrimination, and Defendant is entitled to judgment as a matter of law.

        D.   <u>Disability Discrimination</u>

When an employee brings an employment discrimination claim under either the Rehabilitation Act or Title VII, as with the foregoing types of discrimination, she bears the burden of establishing a prima facie case of discrimination. <u>United States Postal Serv. Bd. of Gov. v. Aikens</u>, 460 U.S. 711 (1983). Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, imposes on federal agencies a duty to take affirmative steps to ensure that disabled individuals have equal access to employment opportunities in the federal government. Section 504, 29 U.S.C. § 794, prohibits discrimination against "otherwise qualified" disabled individuals solely by reason of their disability. The Rehabilitation Act states that "the standards used to determine whether this section has been violated ... shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111 <u>et seq.</u>) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12201 to 12204 and 12210), as such sections relate to employment. <u>See</u> 29 U.S.C. § 794(d).

The ADA prohibits employers from discriminating against employees with a disability who would otherwise be able to perform the essential duties of the job with or without reasonable accommodation. 42 U.S.C. §§ 12111-12112(a). A disability is a physical impairment that "substantially limits" one or more major

life activities.  <u>Toyota Motor Mfg. Ky. Inc. v. Williams</u>, 534 U.S. 184, 197 (2002).  To qualify as disabled under the ADA, one must do more than allege a physical or mental impairment.  One must show that the impairment has a "substantially limit[ing]" effect on major life activities in order for that impairment to rise to the level of disability.  Id.

It is undisputed that Plaintiff was permitted to work as an Acting Supervisor while she was on limited duty with medical restrictions due to her work-related injury or illness. (D.E. 34-4, Exhibit 2: Banks Depo, 197-201, 242-243; D.E. 34-5, Exhibit 3: Banks Depo Exhibits at Exhibit 3, 000355).  Plaintiff's temporary detail ended, not because of any physical inability to perform the job, but because she was reported for instructing a postal customer to go to Walgreens to buy stamps. (D.E. 34-4, Exhibit 2: Banks Depo. at pp. 113-114, 117- 123-130; 154-155,197-201, 242-243; D.E. 34-5, Exhibit 3: Banks Depo Exhibits at Exhibit 3, 000355).

Plaintiff testified in her deposition that she was capable of working a full 8 hours within the limitations of her job-related conditions. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000390-000391).  Plaintiff was asked if her physical impairment substantially impaired any of the following major life activities (i.e. caring for one's self, performing manual task, walking,  seeing, hearing, speaking breathing, learning, or working) and, if so, what and how it affected her. Plaintiff responded "There are some impairments, however, I am capable of working a full 8 hours with limitation." (D.E. 34-5, Exhibit 3:

19

Banks Depo. Exhibits at Exhibit 7 at 000388). Plaintiff was asked if her mental impairment substantially impaired any of the following major life activities (i.e. caring for one's self, performing manual task, walking, seeing, hearing, speaking breathing, learning, or working), and if so, what and how did it affect her. Plaintiff responded: "No, I manage with the professional help of my psychiatric, (sic) whom I am very well please (sic) with. I kept looking for one that could keep me functioning in life as a normal person." (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000390). None of Plaintiff's job related activities were affected by her mental impairment. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 000391). Plaintiff never physically provided management with documentation of a mental impairment. (D.E. 34-5, Exhibit 3: Banks Depo. Exhibits at Exhibit 7 at 00391). Plaintiff lived a normal life and it was difficult for anyone to tell she suffered from mental issues. (D.E. 34-4, Exhibit 2: Banks Depo. at 209-210). Plaintiff states she hid her mental condition "pretty good". (D.E. 34-4, Exhibit 2: Banks Depo. at 252).

Plaintiff lacks proof that Cummins, Iannazzo or Hackett knew that she was seeing a psychiatrist. (D.E. 34-4, Exhibit 2: Banks Depo. at 241). Plaintiff admits management did not discriminate against her "per se mentally", and she has provided no affidavit or document demonstrating that her supervisors were aware of her mental condition. (D.E. 34-4, Exhibit 2: Banks Depo. at 242). Furthermore, Plaintiff did not provide management with documents

related to her mental condition until after she filed her EEO Complaint. (D.E. 34-4, Exhibit 2: Banks Depo. at 207). Plaintiff presently serves as a minister and her day to day activities include making public presentations and counseling others. (D.E. 34-4, Exhibit 2: Banks Depo. at 289-291). Plaintiff has provided no affidavit or exhibit which rebuts Matt Cummins' assertions that he unaware of any physical accommodation requests, the extent of Plaintiff's physical limitations, or her existing mental condition. (D.E. 34-4, Exhibit 2: Banks Depo. at 250-253).

Plaintiff presently serves as a minister and her day to day activities include making public presentations and counseling others. (D.E. 34-4, Exhibit 2: Banks Depo. at 289-291).

Accepting Plaintiff's deposition testimony as true, the facts alleged are insufficient to establish an "impairment" that imposes a substantial limitation on one or more major life activities because she was able to perform her assigned job and other jobs with Defendant.  Plaintiff fails to allege an "impairment" that rises to the level of a disability or substantially limits a major life activity.  See Sutton v. United Air Lines, 527 U.S. 471, 491 (1999)(" When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.") There are no genuine issues of material fact as it relates to Plaintiff's Rehab Act claim, and Defendant is entitled to judgment as a matter of law. Plaintiff's complaint is

dismissed in its entirety. The Clerk shall enter judgment for Defendant.

V.   <u>Appellate Issues</u>

The Court must also consider whether Plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>, should she seek to do so. The Court of Appeals requires that the district court determine, in all cases where the appellant seeks to proceed <u>in forma pauperis</u>, whether the appeal is frivolous. <u>Floyd v. United States Postal Serv.</u>, 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal <u>in forma pauperis</u> must obtain pauper status under Fed. R. App. P. 24(a). Rule 24(a)(3) provides that if a party was permitted to proceed <u>in forma pauperis</u> in the district court, she may also proceed on appeal <u>in forma pauperis</u> without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed <u>in forma pauperis</u> in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. <u>Id.</u> at 445-46. The same considerations that lead the Court to grant Defendant's motion for summary judgment and dismiss this case

22

compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 6th day of December, 2010.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE